UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20254-CR-SEITZ-/SIMONTON

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**HARRY HANNA, et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Presently pending before the Court is the Motion to Suppress filed by Defendant Harry Hanna (DE # 54) and his Amended Motion to Suppress (DE # 63). The Government responded to both motions (DE ## 59, 67). The Honorable Patricia A. Seitz, United States District Judge, has referred this matter to the undersigned United States Magistrate Judge (DE # 57). A hearing on the original motion was held on July 27, 2012 (DE # 61). Based upon the proceedings that occurred at the commencement of the hearing, the undersigned determined that, in the interests of justice, defense counsel's ore tenus motion to supplement the Motion to Suppress should be granted. After the Amended Motion to Suppress was filed, a second hearing was held on August 15, 2012. At the conclusion of the hearing, considering the arguments presented by the parties and the record as a whole, the undersigned announced her conclusions from the bench; and therefore, for the reasons stated on the record, it is hereby recommended that the Motion be denied, without an evidentiary hearing.[1]

---

[1] The parties agreed at the hearing that, in ruling on the Motion, the Court could consider certain exhibits which are more particularly described in the body of this Report and Recommendation.

## I. BACKGROUND

Defendant Harry Hanna is charged in three counts of a five-count Superseding Indictment with conspiring, with co-defendants Ashley Evanoff and Jocelyn Gustave, to possess with intent to distribute a controlled substance, specifically N-Benzylpiperazine (BZP), between early March 2012 and March 23, 2012, in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute BZP and marijuana on March 23, 2012, in violation of 21 U.S.C. § 841(a)(1) (Count 4); and, possession of a firearm in furtherance of a drug trafficking crime, on March 23, 2012, in violation of 18 U.S.C. § 924(c)(1(A) (Count 5) (DE # 36).  The drugs and firearm which form the basis for Counts 4 and 5, together with other evidence, were seized on March 23, 2012, from Defendant Hanna's residence, pursuant to a federal search warrant.[2]  The validity of that search warrant is challenged in the presently pending Motions to Suppress.

## II. THE MOTIONS TO SUPPRESS

Defendant Harry Hanna filed his initial Motion to Suppress on July 16, 2012 (DE # 54).  In this motion, he contended that the averments of the Affidavit filed in support of the search warrant which authorized the search of his residence were insufficient to establish probable cause for the search, and that the Affidavit contained false statements regarding his criminal record.  He contended that "had the Court been correctly advised, it might not have issued the search warrant."  (DE # 54 at 3-4).  In addition, he contended that the Affidavit was so lacking in probable cause that the agents could not have reasonably relied upon the warrant, and therefore the good faith

---

[2] The parties agreed, at the outset of the initial hearing, that the evidence seized pursuant to this search warrant consists of BZP and marijuana, two scales, drug packaging materials, $3,200 in cash, and a loaded firearm.

exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984) did not apply.

The United States responded in opposition, acknowledging that the Affidavit incorrectly stated that the Defendant had been arrested for trafficking in cocaine, but asserting that the Affidavit correctly identified other drug-related arrests, and contending that when the cocaine trafficking arrest was omitted, the remaining averments in the Affidavit were sufficient to establish probable cause, and therefore the warrant remained valid under *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).

An initial hearing was held on the motion, at which time defense counsel sought to call witnesses to challenge various omissions in the warrant, which were not included in the Motion.  Based upon those proceedings, the Defendant was permitted to file an Amended Motion which set forth all challenges to the search warrant, as well as the basis for a request for an evidentiary hearing under the parameters set forth in *Franks*.

Thereafter, Defendant Hanna filed his Amended Motion to Suppress, arguing that the Affidavit filed in support of the search warrant omitted several material facts regarding the observations of law enforcement officers during the investigation, and that it falsely stated the Defendant's criminal record (DE # 63).  The Defendant supported these assertions by attaching a transcript of the evidence presented by the Government during the pretrial detention hearing (DE # 63-4); and docket sheets from the State criminal cases regarding the Defendant's criminal record (DE ## 63-1, 63-2, 63-3).  The Defendant argued that these misstatements and omissions were deliberately made, were material, and without them the Affidavit failed to establish probable cause to support the search warrant.  The Defendant sought an evidentiary hearing.

The Government responded in opposition (DE # 67).  The Government

acknowledged that the Affidavit incorrectly stated the Defendant's criminal history, and that the Affidavit omitted certain observations and statements made by law enforcement officers during the investigation; however, the Government argued that the false statements and omissions alleged by the Defendant were not material to a finding of probable cause, and therefore the Motion should be denied without an evidentiary hearing.  In the alternative, the Government argued that there was not a sufficient showing that the alleged omissions and false statements were made deliberately or with reckless disregard for the truth, and that mere negligence was not sufficient to warrant an evidentiary hearing.  Finally, the Government argued that, assuming the Affidavit failed to establish probable cause, the officers relied in good faith upon the determination of the Magistrate Judge who issued the warrant, and thus under *United States v. Leon*, 468 U.S. 897 (1984), the evidence seized should not be suppressed.

At the hearing, the Government chose to rely solely on its argument that the Affidavit established probable cause to support the warrant, even absent the false information regarding the Defendant's criminal record, and considering the additional facts that the Defendant alleges were improperly omitted from the Affidavit.

Based upon this decision by the Government, the undersigned determined that no evidentiary hearing was required.

### III. THE SEARCH WARRANT

The challenged search warrant was an anticipatory warrant issued by a United States Magistrate Judge based upon an Affidavit filed by DEA Special Agent Jose Mantilla, which authorized the search of the Defendant's residence (Case No. 12-2387-GOODMAN).  The Government filed a copy of the Affidavit and Warrant as an exhibit to its initial response (DE # 67-1).

The following is a summary of the averments in the Affidavit. To assist in evaluating the claims made by Defendant Hanna, the omissions and misstatements alleged by the Defendant have been included as footnotes at the appropriate places of the Affidavit.

The Affidavit begins with a general recitation of the experience of the Affiant, and the types of evidence and documents typically maintained by drug traffickers and found within their residences. Thereafter, Agent Mantilla provides various details of the investigation to establish probable cause to believe that evidence of drug trafficking will be found at the specified residence.

### *Observations Regarding The Transactions Between the Confidential Source and Gustave*

In early March 2012, a confidential informant ("CS") was approached by a person later identified as co-defendant Jocelyn Gustave, who told the informant that he could supply the informant with distribution quantities of ecstasy. On March 9, 2012, the CS met Gustave in front of Gustave's residence and purchased five sample tablets. The transaction was observed by law enforcement officers; and, the tablets field tested positive for ecstasy (Aff. ¶ 4). A preliminary forensic analysis by the Miami-Dade County Forensic Services Bureau showed the presence of methoxydiisopropyltrytamine and n-benzylpiperazine, which are Schedule I controlled substances that have effects similar to that of ecstasy (Aff. ¶ 16).

On March 12, 2012, the CS contacted Gustave and arranged to purchase 100 ecstasy tablets for $550.00, at the parking lot of a Walgreens drugstore. Law enforcement officers watched Gustave as he left his residence alone and traveled to another residence where he met an hispanic female (later identified as co-defendant

Ashley Evanoff), who entered Gustave's car.[3]  The two of them then drove to the target residence, where they parked the car.  After a few minutes, they left the target residence and drove to the Walgreens parking lot.[4]  Gustave parked his car, and law enforcement officers observed Evanoff remove something from her purse and hand it to Gustave.  Gustave put the item in his cargo pants' pocket, and entered the car where the CS and an undercover officer ("UC") were waiting to make the purchase.  Gustave provided the CS and UC with the item he had been given by the female, which he stated was 100 tablets of ecstasy, and the UC gave Gustave $550.00.  Gustave and Evanoff then returned to Evanoff's residence, where they were observed through an open window for about 15 minutes before the surveillance was terminated (Aff. ¶¶ 5-8).[5]

The following night, March 13, 2012, the CS called Gustave to arrange for the purchase of an additional 80 ecstasy tablets.  Gustave stated that he needed to pick up the tablets from his cousin, and that he would call the CS when he had the tablets and was five minutes away from the Walgreens where the exchange would be made.  About 15 minutes after this call, law enforcement officers saw Gustave arrive at his residence, and go inside.  After a short while, Gustave left his residence and drove to Evanoff's

---

[3] The Defendant claims that the Affiant should have included the fact that the officers observed Ms. Evanoff go into the northwest bedroom in the apartment and return with a bag, and that the surveillance officer expressed his belief at the time, in a radio transmission to other officers, that Ms. Evanoff was carrying the drugs in her bag (DE # 63 at 2, 7).

[4] The Defendant claims that the Affiant should have included the fact that the officers did not observe either Gustave or Evanoff exit the vehicle at the target residence (DE # 63 at 2).  The transcript of the pretrial detention hearing reflects that the officers were unable to see whether either of them entered the house (DE # 63-4 at 9).

[5] The Defendants claims that the Affiant should have included the fact that the officers observed Gustave and Evanoff counting money after they entered Evanoff's residence (DE # 63 at 3, 8-9).

residence. Evanoff entered Gustave's car, and they both drove to the target address. Gustave entered the target residence, remained inside for two or three minutes, and then returned to his car.[6] Gustave called the CS and stated that he was en route with the requested 80 tablets of ecstasy. Law enforcement agents followed Gustave to the Walgreens, and saw Gustave park his car. Gustave then entered the UC's car and he exchanged 80 tablets for $450.00. Law enforcement officers then followed Gustave and Evanoff back to Evanoff's apartment, and observed them enter the apartment. After approximately 15 minutes, the surveillance was terminated (Aff. at ¶¶ 9-14).

### *Information Regarding the Target Residence and Defendant Harry Hanna*

The Affidavit then states that the target residence is owned by defendant Harry Hanna's mother. It states that, "A check of Hanna's criminal history showed that Hanna has numerous arrests for trafficking marijuana, trafficking cocaine and possession of a controlled substance without a prescription" (Aff. ¶ 15).[7] Surveillance of the residence

---

[6] The Defendant claims that the Affiant should have included the fact that the officers did not observe Gustave carrying anything as he left the Mr. Hanna's residence (DE # 63 at 3).

[7] The Defendant asserts that his criminal record was misrepresented in the Affidavit. Initially, the Defendant asserts, and the Government agrees, that Defendant Hanna has never been arrested for cocaine trafficking. The Defendant claims that he was arrested twice for simple possession of marijuana and cocaine in 2001. One case was dismissed, and Mr. Hanna was acquitted in the other. In addition, the Defendant asserts that he was not arrested for marijuana trafficking, but only for possession with intent to deliver marijuana and simple possession of a controlled substance, in 2006; and, that the charges filed were simple possession of marijuana and simple possession of cocaine, for which he received a withhold of adjudication of guilt. Finally, the Defendant asserts that his only other arrest was for simple possession of marijuana in 2008, for which he received a withhold of adjudication of guilt. (DE # 63 at 10; DE ## 63-1, 63-2, 63-3).

At the hearing, the Government introduced the NCIC report (GX 1) which contains the information upon which the Affiant relied in preparing the Affidavit. It reflects an arrest on February 27, 2001, for possession of marijuana, with an unknown disposition.

7

established that Harry Hanna freely entered and exited the residence.

*Information to Support the Issuance of an Anticipatory Warrant*

On March 20, 2012, the CS contacted Gustave to arrange for the purchase of 1,000 ecstasy tablets for $4,750.  The purchase was scheduled to take place on March 23, 2012, at the same Walgreens location.  The Affidavit states that law enforcement officers intend to establish surveillance of Gustave in advance of the scheduled transaction; and that they "anticipate that as with the prior transactions, Gustave will first go to the target address, which is where law enforcement officers believe he obtains the controlled substance he intends to sell to the CS" (Aff. ¶ 17).

Based upon the information contained in the Affidavit, the Affiant stated his belief that if Gustave drove to the target address before meeting with the CS, there would be probable cause to believe that the specified evidence of violations of the narcotics laws would be found inside the target residence (Aff. ¶ 18).

The warrant was issued on March 22, 2012 (DE # 67-2).  On March 23rd, the day the transaction had been scheduled, officers again observed Gustave pick up Evanoff, and then travel to the target residence.  Gustave entered the target residence, and exited after several minutes.  Gustave was then arrested, the residence was searched, and the evidence described above was seized (DE # 63 at 4).  Gustave did not possess any narcotics when he was arrested (DE # 63 at 4).

---

**It also reflects an arrest on March 30, 2001, for cocaine possession and possession of drug paraphernalia with intent to use; with the charges dropped on April 30, 2001.  It also reflects an arrest on January 7, 2006 for "Marijuana - Sell" further described as "Cannabis Sell man deliver possess w intent" and possession of a controlled substance without a prescription, for which the Defendant received a withhold of adjudication as to both offenses; and, an arrest on July 9, 2008 for possession of not more than 20 grams of cannabis, for which the Defendant received a withhold of adjudication (GX 1).**

IV.     **LEGAL ANALYSIS**

In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court set forth guidelines to be used in determining whether an affidavit establishes probable cause to believe that evidence or fruits of a crime will be found at the specified location, stating, "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  462 U.S. at 238-39 (citation omitted).

In the context of the search of a residence, "the nexus between the objects to be seized and the premises search3ed can be established form the particular circumstances involved and need not rest on direct observation."  *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990); *accord United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) ("observations of illegal activity occurring away from the suspect's residence can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence."); *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) ("direct evidence that contraband or evidence is at a particular site is not essential to establish probable cause to search a location").

Under *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny, a search warrant may be invalidated only where (1) it contains false statements made with either knowledge of their falsity or reckless disregard for the truth; and, (2) the remaining information contained in the warrant is insufficient to establish probable cause.  This

9

principle has been extended to apply to material omissions of fact, so that a warrant will also be invalid if "the inclusion of those facts would have prevented a finding of probable cause." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Moreover, "allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171; *United States v. Martin*, 615 F.2d 318 (5th Cir. 1980). The determination of whether to hold an evidentiary hearing is discretionary with the Court; and, no hearing is required if the Affidavit establishes probable cause even when the challenged facts are excluded and the claimed omissions are included. *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011); *United States v. Kapordelis*, 569 F.3d 1291, 1309-10 (11th Cir. 2009).

In sum, as emphasized by the Eleventh Circuit Court of Appeals in *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001), "in order to be entitled to relief a defendant must show not only that misrepresentations or omissions were intentionally or recklessly made, but also that, absent those misrepresentations or omissions, probable cause would have been lacking. That is the test of materiality, and materiality is essential no matter how deliberate or reckless the misrepresentations were." *Accord United States v. Burston*, 159 F.3d 1328, 1333-34 (11th Cir. 1998).

In the case at bar, it is not necessary to determine whether the admittedly incorrect criminal history, or the omissions, were made deliberately or recklessly, since they are not material. With respect to the criminal history of the Defendant, the undersigned notes at the outset that the only information provided in the Affidavit concerned arrests and not convictions; thus its probative value was minimal. Setting aside the cocaine trafficking arrest, the affidavit also states that the Defendant was arrested for "marijuana trafficking," rather than possession with intent to sell marijuana,

which is the correct terminology.  Although use of the word "trafficking" connotes a more serious offense than mere possession with intent to sell, the undersigned concludes that this was not a material distinction in the context of this case, particularly where there were other arrests which could be used to infer that the defendant was not a stranger to the world of illicit drug use.  As the analysis set forth below demonstrates, even absent any information which tied the defendant to prior drug involvement, the remaining allegations, even when combined with the omissions cited by the Defendant, established "a fair probability that contraband or evidence of a crime" would be found at the target residence, as required by *Gates*.

As the Government points out, the first two transactions followed the same pattern.  The CS and Gustave spoke by telephone and the CS arranged to purchase a quantity of ecstasy, with the transaction set to occur in a Walgreens parking lot.  Gustave then left his residence and went to pick up Evanoff at her residence.  The two of them then traveled to the target residence, where they stopped for a few minutes, and then traveled to the nearby Walgreens where Gustave delivered the tablets to the confidential source and undercover agent.

With this pattern established, the government arranged for a third purchase, and obtained an anticipatory search warrant which allowed them to search the residence if the same pattern was followed for a third time; and which would be triggered only if Gustave drove to the target residence prior to meeting the CS.  When this event occurred, the warrant was executed.

The fact that after the first transaction, the officers observed Ms. Evanoff retrieve her purse and believed, prior to the time that Gustave and Evanoff drove to the target residence, that Evanoff carried the drugs in her purse does not in any way denigrate the

reasonable belief that the drugs were obtained from the target residence.  Similarly, the fact that the officers could not tell whether Gustave or Evanoff entered the target residence prior to the first transaction is not a material omission.  The Affidavit does not state or imply that the officers observed this.  There is certainly a reasonable inference that the drugs were obtained there since the stop there was brief and there is no other apparent reason for such a stop en route to a drug transaction.  Moreover, the fact that Gustave and Evanoff were seen counting money after they returned to Evanoff's residence following the first transaction is not in any way inconsistent with the inference that the drugs were obtained from Hanna's residence.  It was reasonable to count the money in a safe location following the transaction, regardless of where the drugs originated.  Thus, this was not a material omission.  Finally, the fact that the officers did not observe Gustave carrying anything when he left the target residence prior to the second transaction is of no moment.  The amount of drugs involved was sufficiently small that they could be easily concealed–in fact, the second purchase was a smaller quantity than the first purchase, which Gustave had concealed in his pants pocket prior to the transaction.

In sum, where on two occasions, Gustave traveled to the target residence for a brief period of time immediately prior to selling illicit drugs to the confidential source and undercover agent, there was a fair probability that drugs and evidence of drug trafficking would be found at that location when Gustave traveled there a third time prior to an intended sale of drugs.  Neither the misrepresented criminal history, nor any of the asserted omissions, viewed collectively, affect this determination of probable cause.

Therefore, based upon the foregoing analysis, it is hereby

**RECOMMENDED** that the Motion to Suppress (DE # 54) and the Amended Motion

to Suppress (DE # 63) be **DENIED**.

The parties will have fourteen calendar days from the date of service of this Order within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida, on September 12, 2012.

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable Patricia A. Seitz,
    United States District Judge
All counsel of record